THE ATCHISON, TOPEKA & SANTA FE RAILWAY
COMPANY v. MORTIMER HAMLIN *et ux.*

No. 14,837   (88 Pac. 541.)

SYLLABUS BY THE COURT.

RAILROADS—*Injury to Employee—Negligence a Question for the Jury.* In an action for damages against a railway company for the killing of one of its employees inferences of fact respecting the prudence of the conduct of the defendant and of the deceased, drawn by the jury from a mass of equivocal circumstantial evidence summarized in special findings, and expressed in a general verdict, will not be disturbed.

Error from Reno district court; PETER J. GALLE, judge. Opinion filed January 5, 1907. Affirmed.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for plaintiff in error.

*Carr W. Taylor,* and *Fairchild & Lewis,* for defendants in error.

The opinion of the court was delivered by

BURCH, J.: The plaintiffs sued the defendant for damages resulting from the killing of their son, Reuben Hamlin, and recovered. The deceased was an employee of the defendant, and with thirty or forty others known as the "steel gang" was engaged in taking out the rails of the defendant's track for the purpose of replacing them with new ones. The work was conducted in such a manner as not to interfere with the operation of trains. The men were distributed along

the track for several hundred feet, the foreman, whose name was Devine, being at the west end of the work. A passenger-train from the west was expected. As it approached the engine whistled at the station of Partridge, some five or six miles away. It whistled again at a highway crossing about half a mile from the steel gang. As it came nearer Devine gave the engineer the signal that the track was safe, and gave the usual shout to the men to clear the track. The engineer answered Devine's signal by two blasts of the whistle. A high wind was blowing at the time, and some of the men were gathering up their tools preparatory to quitting work and going to Partridge. Hamlin, who was at the east end of the line of men, failed to leave the track in time to avoid the engine.

A judgment for the plaintiffs was reversed by this court in *Railway Co. v. Hamlin*, 67 Kan. 476, 73 Pac. 58. The decision turned upon the interpretation of a large number of findings of fact, which are printed in full in the report of the case, and to which reference is made. At the second trial the same interrogatories as before, save two or three, were propounded to the jury, and some additional questions were submitted and answered. A comparison of the two sets of findings reveals a number of material differences, and in every instance the change has strengthened the plaintiffs' case. Only the variations from the previous findings need be noted here.

It now appears that the whistle at Partridge was not heard by any of the steel gang. The engine was one-fourth of a mile west of the steel gang, instead of only about 450 feet, when the engineer acknowledged Devine's signal. On the morning of the accident the blasts of the whistle could be heard only about one-fourth of a mile, instead of about five miles. Hamlin was about 1600 feet east of the engine, instead of 750 feet, when the engineer answered Devine's signal. Devine was about 400 feet west of Hamlin, instead of

300 feet, when he shouted for the men to clear the track. Devine shouted but once.

The bell was not ringing when the accident occurred. The ringing sound from the steel rails when a heavy train approaches cannot at all times be heard three or four hundred feet in front of the engine by one standing over or near the rails. The rumbling of the train could be heard a short distance only in front of it, instead of about 600 feet. Hamlin could not have moved out of the way had he noticed the train when it was twenty-five feet distant from him.

The engineer shut off steam and permitted the train to drift through the steel gang. When a train drifts there is scarcely any noise. A high wind was blowing at the time the train approached. These facts, taken in connection with the speed at which the train was running and the noise made by other members of the steel gang, would prevent a man of ordinary care and prudence who was at work from hearing the train as it approached, and were sufficient to prevent Hamlin from hearing the blasts of the whistle, the ringing of the rails and the rumbling of the train.

From six to nine trains passed the steel gang each day. It was Devine's duty to warn the men of the approach of the train. The men cleared the track in the usual and ordinary way. Hamlin did not know that the others were leaving the track because of the approach of the train. Hamlin was discharging a necessary duty in the customary manner. He was standing in a stooped position on the north side of the rail, close to it. He received no warning either from Devine or from the engineer. While the steel gang was expecting the train, and while Hamlin was familiar with its time for passing going east, he did not know the time it was expected on the day he was killed.

These findings harmonize with themselves, with all the others, and with the general verdict, and they meet the arguments advanced in the former opinion of this

court. It was there said to be inconceivable that the deceased alone of all the men did not hear or see the train. As the case now presents itself such an inference may be drawn. The evidence bearing upon the question of what Hamlin saw and heard and of what he ought to have seen and heard is wholly circumstantial and depends upon the testimony of many witnesses concerning many facts. The question being one of fact the court does not feel competent to solve it from the record, if it were its duty to do so.

It was the duty of Hamlin and of all the men to work and not to spend their time gazing up and down the track and listening for distant trains. It was their duty to work in front of approaching trains as long as it was safe to do so, especially in view of the number which passed each day. It was Devine's duty to watch and warn. He was eyes and ears and guardian for his men. The blasts of the whistle, the ringing of the rails and the rumbling of the train were not warnings. They were mere circumstances which might under favorable conditions give notice of the train's approach. Their inadequacy and inexpediency as warnings were confessed when the duty was imposed upon Devine to notify the men of coming trains. The movement of the other men was not a warning. Nearly half of them were collecting their tools to return to Partridge.

Of course, if a monitory fact of any kind other than the regular signal to clear the track had been apprehended by Hamlin it would have been his duty to give it proper heed; but he was not obliged to guide his conduct by such facts unless apprised of them or unless the conditions were such that knowledge of them ought not to have escaped him.

It was Hamlin's duty to be alert for the warnings he was bound to expect. But it was Devine's duty to give adequate warning according to the circumstances. In view of Devine's position at one end of the line of

men, the long distance the men were scattered apart, the confusion of noises which prevailed, and the high wind with which his voice was obliged to contend, it was a fair question for the jury whether the ordinary signal—a single outcry—was sufficient.

Since the material facts are found in such minute detail it is not necessary to discuss the bearing of the instructions given upon the general verdict or the refusal of the court to give the instructions asked.

Some of the special findings do not harmonize with the statements of some of the witnesses. It was for the jury to determine how much or how little of the testimony of each witness they would accept, and all statements were to be weighed in the light of all the circumstances of the accident.

As already indicated, the meritorious question presented to this court is, What inferences of fact should be drawn from the equivocal mass of circumstantial evidence summarized in the special findings respecting the prudence of the conduct of the deceased and the conduct of the defendant? The ordinary rule applies, and the conclusions of the jury expressed in the general verdict will not be disturbed.

The judgment of the district court is affirmed.